

B. McKay Mignault, Chief Bankruptcy Judge
United States Bankruptcy Court

# UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# AT PARKERSBURG

| | |
|---|---|
| IN RE:<br><br>SHIRLEY ANN FRAZIER,<br><br><br>Debtor. | CASE NO. 3:23-bk-30203<br><br>CHAPTER 7<br>No asset<br><br>JUDGE B. MCKAY MIGNAULT |
| SHIRLEY ANN FRAZIER,<br><br>              Plaintiff,<br><br>v.<br><br>LENDMARK FINANCIAL SERVICES, LLC,<br><br>              Defendant. | ADVERSARY PROCEEDING<br>CASE NO. 3:25-ap-03006 |

## MEMORANDUM OPINION AND ORDER

Pending is the *Motion to Dismiss Plaintiff's Complaint and Adversary Proceeding* [dkt. 5] ("Motion") filed by Defendant Lendmark Financial Services, LLC ("Lendmark") on June 24, 2025. Plaintiff Shirley Ann Frazier ("Frazier") filed her *Response to Defendant's Motion to Dismiss* [dkt. 10] on July 8, 2025, and Lendmark filed its *Reply in Support of Motion to Dismiss Plaintiff's Complaint and Adversary Proceeding* [dkt. 11] on July 16, 2025. A hearing was held on August 13, 2025, at which the Court heard argument and took the Motion under advisement. All briefing having been completed, the matter is now ripe for adjudication. For the reasons stated herein, the Court **GRANTS** Lendmark's Motion and **DISMISSES** Frazier's Complaint [dkt. 1].

**FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND**

Frazier, a resident of Mason County, West Virginia, filed a Chapter 7 bankruptcy petition on August 9, 2024. Compl. ¶ 3. Frazier listed a 2002 Honda CR-V ("CR-V") on Schedule A/B of her bankruptcy petition, with a value of $4,300. *Id.* ¶¶ 5, 6. The CR-V is subject to Lendmark's secured claim of $11,254.20, based on a promissory note and security agreement executed by Frazier and Lendmark on December 10, 2021. *Id.* ¶¶ 7, 26, 30; Mot. Ex. A [dkt. 5-1] ("Agreement") at 1.[1] In her Statement of Intent filed in the Chapter 7 proceeding, Frazier indicated that she desired to surrender the CR-V to Lendmark. Compl. ¶ 9.

The Agreement permits—but does not require—Lendmark to resort to certain remedies upon Frazier's default. More specifically, the Agreement provides that upon the occurrence of any event of default, Lendmark "may" resort to certain remedies listed in the Agreement, such as using "any remedy . . . under state or federal law" or "[t]ak[ing] immediate possession" of the CR-V. Agreement at 2. The Agreement further provides that, upon default, Lendmark "may sell, lease or dispose of the [collateral] as provided by law" and that Lendmark "may apply what [it] receive[s] from the sale of the [collateral]" to Lendmark's expenses and then to the debt. *Id.*

Frazier's Chapter 7 case was closed on March 1, 2024, following the entry of an Order of Discharge [dkt. 32] ("Discharge Order") on February 26, 2024. Compl. ¶¶ 11, 12. The Discharge Order provided, among other things, that "no one may make any attempt to collect a discharged debt from the debtor[] personally" and that "a discharge removes the debtor['s]

---

[1] The Court may consider the Agreement attached to Lendmark's Motion. Courts may "consider a document that a defendant attaches to its motion to dismiss if the document was integral to and explicitly relied on in the complaint and if the plaintiff[] do[es] not challenge its authenticity." *CACI Int'l, Inc. v. St. Paul Fire and Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009) (internal quotations omitted). Here, Frazier relies on the Agreement and has not challenged its authenticity. *See, e.g.*, Compl. ¶¶ 26, 30 (Frazier citing to the "security agreement"); Pl.'s Resp. to Def.'s Mot. to Dismiss ("Resp.") at 3 (Frazier citing to the "combined promissory note and security agreement, attached to Defendant's motion").

2

personal liability for debts owed before the debtor['s] bankruptcy case was filed." Discharge Order at 1. The Discharge Order also stated that it did not extinguish valid liens of creditors. *See id.* ("However, a creditor with a lien may enforce a claim against the debtor['s] property subject to that lien unless the lien was avoided or eliminated.").

Following entry of the Discharge Order, in July of 2024, Frazier's counsel contacted Lendmark and requested that Lendmark take possession of the CR-V. Compl. ¶ 15. On March 12, 2025, a representative of Lendmark sent an email to Frazier's counsel to verify the location of the CR-V. *Id.* ¶ 17. On April 22, 2025, Frazier's counsel replied with a deadline of May 6, 2025, for Lendmark to pick up the vehicle or to provide the title to Frazier. *Id.* ¶ 18. Frazier's efforts to surrender the CR-V to Lendmark, however, were futile. Lendmark did not take possession of the CR-V or provide the title to Frazier, requiring Frazier to store the vehicle at her own expense and inconvenience. *Id.* ¶¶ 13, 14.

Frazier filed the Complaint in her adversary proceeding on May 29, 2025. As of that date, Frazier was unable to dispose of the CR-V due to the lack of title, as well as her duty to protect Lendmark's collateral.[2] *Id.* ¶ 20. Frazier's Complaint asserts four counts against Lendmark: outrage (Count I); breach of duty of good faith and fair dealing (Count II); breach of contract (Count III), and civil contempt for violation of the Discharge Order (Count IV). Lendmark's Motion sets forth two arguments for dismissal: (1) that the Court lacks subject-matter jurisdiction over Frazier's claims; and (2) that Frazier has failed to state a claim upon which relief can be granted.

---

[2] At the August 13th hearing, the Court inquired as to why Lendmark did not take possession of the CR-V. Counsel for Lendmark stated that Lendmark has now, in fact, taken possession of the CR-V.

3

## STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7008 of the Federal Rules of Bankruptcy Procedure, provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Fed. R. Bankr. P. 7008. Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b).

The party moving for dismissal has the burden of showing that no claim for which relief can be granted has been stated. *Tillette v. Beneficial W. Va., Inc. (In re Tillette)*, 557 B.R. 902, 906 (Bankr. S.D. W. Va. 2016). In adjudicating a motion to dismiss, a court evaluates whether the pleadings state "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014). In doing so, a court must construe the facts in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Oberg*, 745 F.3d at 136. A court, however, need not accept as true unwarranted inferences, unreasonable conclusions, or arguments. *Id.* Nor must a court credit allegations that offer only naked assertions devoid of further factual enhancement. *Id.*

## DISCUSSION

**1. Subject-matter jurisdiction.**

Initially, the Court must determine if it has jurisdiction to hear the claims asserted in this adversary proceeding. "[L]ike all federal courts, bankruptcy courts have limited

4

jurisdiction." *Houck v. Lifestore Bank Substitute Trustee Servs., Inc.*, 582 B.R. 138, 150 (Bankr. W.D.N.C. 2018). The three types of proceedings over which bankruptcy courts have jurisdiction are those "arising under," "arising in," and "related to" cases under Title 11. *Id.* at 151.

The first category, claims "arising under" the Bankruptcy Code, extends to cases in which a complaint either establishes that bankruptcy law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal bankruptcy law. *See Harlan v. Rosenberg & Assocs., LLC (In re Harlan)*, 402 B.R. 703, 709 (Bankr. W.D. Va. 2009). The second category, those claims "arising in" bankruptcy, are claims which are not based on any right expressly created by Title 11 but would nonetheless have no existence outside of the bankruptcy. *Valley Historic Ltd. P'ship v. Bank of N.Y.*, 486 F.3d 831, 835 (4th Cir. 2007). Finally, the third category, or those matters "related to" a bankruptcy case, covers a broader range of proceedings. The Fourth Circuit, like many others, applies the *Pacor* test in determining whether a matter is sufficiently "related to" a bankruptcy case such that bankruptcy court jurisdiction is appropriate. *Houck*, 582 B.R. at 151-52. The *Pacor* test examines "whether the outcome of [a] proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.* at 152 (quoting *Pacor, Inc. v. Higgins (In re Pacor)*, 743 F.2d 984, 994 (3d Cir. 1984)).

Lendmark argues that the Court lacks "arising under," "arising in," and "related to" jurisdiction over Frazier's claims. According to Lendmark, Frazier's claims do not invoke substantive rights created by the Bankruptcy Code. Instead, Lendmark argues, Frazier's post-petition claims would have existed regardless of whether she filed a bankruptcy petition. Lendmark argues further that because Frazier's claims for relief arose post-petition and post-

5

discharge, those claims are not property of the bankruptcy estate and thus would not be available for distribution under the Bankruptcy Code.

The Court turns first to Frazier's claim for civil contempt (Count IV). Frazier's argument is that Lendmark made constructive attempts to collect on a discharged debt by failing to possess the CR-V, which Frazier claims violates the discharge injunction. Section 524(a)(2) of the Bankruptcy Code provides that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). "Section 524(a) is a broad injunction power which effectively bars creditors from collecting debts as personal liabilities from a discharged debtor." *In re Meyers*, 344 B.R. 61, 64 (Bankr. E.D. Pa. 2006). Section 524, however, does not contain an express provision authorizing an award of actual damages as a remedy for violations of the discharge injunction. *See Adkins v. Universal Fed. Credit Union (In re Adkins)*, 555 B.R. 541, 546 (Bankr. S.D.W. Va. 2016). Violations of the discharge injunction are punished by contempt of court, and bankruptcy courts use this statutory contempt power to order monetary relief. *Id.*

The Court finds that Frazier's claim for civil contempt is a claim "arising under" the Bankruptcy Code. Frazier's claim that Lendmark violated the discharge injunction implicates a right that exists solely because Frazier obtained a discharge in bankruptcy. Moreover, this claim is determined by a statutory provision of Title 11—specifically, § 524(a)(2). Several other courts have reached the same conclusion. *See, e.g.*, *Harlan*, 402 B.R. at 710 ("A debtor's claim to enforce the discharge injunction is a core proceeding 'arising under' the Bankruptcy Code."); *Larson v. Shelton (In re Shelton)*, No. 8:20-cv-00268-JWH, 2021 WL 4864191, at *3 (C.D. Cal. Oct. 18, 2021) (holding that "the bankruptcy court had exclusive jurisdiction to determine whether

Appellants violated the discharge injunction and to impose civil contempt sanctions after finding any such violation"); *Ajasa v. Wells Fargo Bank, N.A. (In re Ajasa)*, 627 B.R. 6, 11 (Bankr. E.D.N.Y. 2021) ("Enforcement of the discharge injunction is a core proceeding arising under the Bankruptcy Code."); *Close v. Edison (In re Close)*, No. 93-17145DWS, Adv. No. 03-0153, 2003 WL 22697825, at *3 (Bankr. E.D. Pa. Oct. 29, 2003) ("Count I also asks for sanctions for such contempt and enforcement of the Discharge Order, namely that I direct [the creditor] to cease all further collection activities.  Here my subject matter jurisdiction is clear."); *Budget Serv. Co. v. Better Homes of Va., Inc.*, 804 F.2d 289, 292 (4th Cir. 1986) (similarly holding "that a proceeding to prosecute a violation of the automatic stay is a core proceeding").

The Court turns next to Frazier's three state-law claims (Counts I, II, and III), which Frazier asserts fall under the Court's "arising in" and "related to" jurisdiction.  As to "arising in" jurisdiction, Frazier contends, without support, that these claims would have no existence outside of the bankruptcy case.  She also asserts that "related to" jurisdiction exists because a determination of her duties under the loan documents to maintain collateral following a discharge alters her rights and liabilities and because administration of the bankruptcy estate is affected by the reopening of her case.  The Court disagrees with Frazier's contention that her state-law claims fall within this Court's "arising in" or "related to" jurisdiction.[3]

To start, Frazier's state-law claims do not fall within the Court's "arising in" jurisdiction.  Causes of action for outrage, breach of contract, and breach of the duty of good faith and fair dealing are creatures of state law that can be pursued outside of the bankruptcy context—for example, through an action in state court.  *See, e.g., Wynne v. Aurora Loan Services, LLC (In re Wynne)*, 422 B.R. 763, 770-72 (Bankr. M.D. Fla. 2010) (holding that state-law claim for slander

---

[3] It is equally clear that these claims are created by state law, not the Bankruptcy Code, and therefore cannot fall within the Court's "arising under" jurisdiction, either.

7

of title in action for violation of the discharge injunction did not fall within the bankruptcy court's "arising in" jurisdiction because a slander of title claim can exist outside of a bankruptcy case); *Harlan*, 402 B.R. at 711 (finding that FDCPA claims arising out of an alleged violation of the discharge injunction did not "arise in" the bankruptcy proceeding because they could be brought in a federal district court or any other court of competent jurisdiction); *Vienneau v. Saxon Cap., Inc. (In re Vienneau)*, 410 B.R. 329, 334 (Bankr. D. Mass. 2009) (holding that claims for breaching the covenant of good faith and fair dealing and intentional infliction of emotional distress, among other state-law claims, did not fall within the bankruptcy court's "arising in" jurisdiction because "each of them can exist outside of the bankruptcy case"). Because these claims can exist outside of bankruptcy, they do not "arise in" the bankruptcy case.

This Court also lacks "related to" jurisdiction over Frazier's state-law claims. Although it covers a broader range of proceedings than "arising under" or "arising in" jurisdiction, "related to" jurisdiction is not without limits. It is not so "broad as to encompass litigation of claims arising under state law or non-bankruptcy Federal law that will not have an effect on the bankruptcy estate, simply because one of the litigants filed a petition in bankruptcy." *Gates v. Didonato (In re Gates)*, No. 04-12076-SSM, Adv. No. 04-1240, 2004 WL 3237345, at *2 (Bankr. E.D. Va. Oct. 20, 2004). Fourth Circuit precedent sheds light on the breadth of "related to" jurisdiction. In *Valley Historic*, the debtor financed renovations to two office buildings through a loan secured by real estate and filed for Chapter 11 protection after the creditor increased payments on the loan by nearly tenfold. 486 F.3d at 834. The confirmed plan provided that the court would fix and liquidate the bank's claim subject to the debtor's claims and setoffs in an adversary proceeding over which the bankruptcy court would retain jurisdiction. *Id.* Importantly, the plan

8

did not vest the debtor's potential recovery from the adversary proceeding in the estate, and the bank's claim was fully satisfied from a post-confirmation sale of the debtor's real estate. *Id.*

After the sale, the debtor initiated an adversary proceeding seeking damages for the bank's prepetition breach of contract and tortious interference. *Id.* The bankruptcy court held that it had jurisdiction, but the district court reversed. On appeal, the Fourth Circuit held that there was "no conceivable bankruptcy administration purpose to be served by the Debtor's adversary proceeding." *Id.* at 837. Because disposition of the adversary proceeding had no effect on the bankruptcy estate, the bankruptcy court had no power to hear the debtor's state-law claims. *See id.* at 837-38.

Similar to *Valley Historic*, Frazier's state-law claims are not "related to" the bankruptcy proceeding because any recovery from these claims would have no effect on the bankruptcy estate. Other courts having considered the same question agree. *See e.g.*, *Wynne*, 422 B.R. at 770-72 (holding that the bankruptcy court lacked "related to" jurisdiction to decide state-law claims for violation of the discharge injunction because the claims arose post-petition and did not constitute property of the estate); *Harlan*, 402 B.R. at 713 ("Jurisdiction is not vested in this Court solely because the Debtors' FDCPA claims share a common factual nexus with their claim for the Defendants' willful violation of the discharge injunction."); *Johnston v. Valley Credit Servs., Inc. (In re Johnston)*, No., 05-6288, Adv. No. 06-180, 2007 WL 1166017, at *6 (Bankr. N.D. W. Va. Apr. 12, 2007) (concluding that the bankruptcy court lacked "related to" jurisdiction over a state-law claim based on post-petition communications with the debtor because "win, lose, or draw, the bankruptcy estate will be wholly unaffected by the outcome of the litigation"); *Gates*, 2004 WL 3237345, at *2 (holding that the bankruptcy court lacked "related to" jurisdiction over FDCPA claims based on the same conduct alleged to have violated the discharge injunction

9

because recovery would not benefit the bankruptcy estate); *Close*, 2003 WL 22697825, at *4 (holding that the bankruptcy court lacked "related to" jurisdiction over state-law claims arising out of an alleged violation of the discharge injunction); *Steele v. Ocwen Fed. Bank (In re Steele)*, 258 B.R. 319, 322 (Bankr. D.N.H. 2001) (holding that the bankruptcy court lacked "related to" jurisdiction to rule on state-law causes of action for a post-discharge injunction violation).

The reasoning behind these decisions is the same: the state-law (or non-bankruptcy federal law) causes of action, based upon post-petition and post-discharge conduct, are not property of the estate. Prosecution of such claims would not benefit or otherwise have had a conceivable effect on the bankruptcy estates. Here, too, any recovery on Frazier's post-petition state-law claims would not be property of the bankruptcy estate because the claim did not exist as of the commencement of the case. *See* 11 U.S.C. § 541(a)(1) (stating that a bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case"); *see also Deceder v. Pa. Higher Educ. Assistance Agency (In re Deceder)*, 351 B.R. 261, 266 (Bankr. D. Mass. 2006) (holding that "[b]ecause the Debtor's claim for relief . . . arose post-petition, it is not property of her bankruptcy estate"). Frazier's state-law claims arose post-petition (and post-discharge). Because any recovery from Frazier's state-law claims cannot have any effect on the bankruptcy estate, these claims are not "related to" her bankruptcy proceeding.[4]

---

[4] Frazier does not assert that this Court has supplemental jurisdiction over her state-law claims. Even if she did, courts in this Circuit have concluded that bankruptcy courts do not have supplemental jurisdiction. *See, e.g.*, *Johnston*, 2007 WL 1166017, at *6 ("Congress has not extended § 1367's [supplemental] jurisdictional grant to the bankruptcy courts."); *Harlan*, 402 B.R. at 713 (holding that there is no statutory basis for bankruptcy courts to exercise supplemental jurisdiction over non-core, unrelated claims).

### 2. Failure to State a Claim.

Because the Court lacks subject-matter jurisdiction over Frazier's state-law claims, I will only address the merits of Frazier's civil contempt claim (Count IV), which arises under Title 11. The crux of Frazier's civil contempt claim is that Lendmark's failure to take possession of the CR-V constituted a sanctionable violation of the discharge injunction. In support of this argument, Frazier points out that Lendmark's refusal to retrieve the CR-V required her to store, protect, and care for the vehicle for more than a year after discharge. While the Court recognizes the distress that Lendmark's action (or more aptly termed inaction) caused Frazier, the Court agrees with Lendmark that Frazier has failed to state a claim for civil contempt.

"Determining if a party has committed civil contempt involves essentially only consideration of whether the party knew about a lawful order and whether he complied with it." *Burd v. Walters (In re Walters)*, 868 F.2d 665, 670 (4th Cir. 1989). Here, there is no dispute that Lendmark knew of the Discharge Order. What is in dispute is whether Lendmark complied with it.

It is important to start with what a bankruptcy discharge does and does not do. A "discharge in bankruptcy proceedings extinguishes the *personal liability* of the debtor but not a valid lien upon his or her property." *Burford v. United States*, No. 91-00030-E, 1991 WL 353294, at *2 (N.D. W. Va. May 22, 1991) (emphasis in original); *see also Johnson v. Home State Bank*, 501 U.S. 78, 82-83 (1991) (concluding that Chapter 7 liquidation extinguishes only the personal liability of the debtor); *Canning v. Beneficial Maine, Inc. (In re Canning)*, 442 B.R. 165, 170 (Bankr. D. Me. 2011) ("A bankruptcy discharge relieves the debtor of *personal* liability for pre-petition debts. Absent avoidance or modification, a discharge does not affect a secured creditor's lien in its collateral; the lien survives and is enforceable after the bankruptcy proceedings in

11

accordance with state law." (emphasis in original)). Therefore, although the Bankruptcy Code "provides a discharge of personal liability for debt, it does not discharge the ongoing burdens of owning property." *Canning*, 442 B.R. at 172. And despite providing for a surrender option, the Bankruptcy Code "does not force creditors to assume ownership or take possession of collateral." *Id.*; *see also Bentley v. OneMain Fin. Grp., LLC (In re Bentley)*, No. 19-8026, 2020 WL 3833069, at *12 (B.A.P. 6th Cir. July 8, 2020) (holding that "a debtor's surrender of collateral . . . does not require a creditor to take possession thereof"); *In re Service*, 155 B.R. 512, 514 (Bankr. E.D. Mo. 1993) (holding that the "[d]ebtors may not compel th[e] creditor to accept surrender").

With this framework in mind, the Court agrees with Lendmark that it did not violate the discharge injunction by failing to take possession of the CR-V. This holding is in accord with the cases cited in Lendmark's Motion. In *Bentley*, for example, a Chapter 7 debtor who elected to surrender a vehicle argued that the lienholder must either repossess the vehicle or release its lien to avoid contempt. *In re Bentley*, 607 B.R. 889, 891 (Bankr. E.D. Ky. 2019). The bankruptcy court disagreed with the debtor, holding that the creditor's conduct was not objectively coercive, and the Bankruptcy Appellate Panel for the Sixth Circuit affirmed. *Id.* at 897; *Bentley*, 2020 WL 3833069, at *10-13. Similarly, in *Canning*, the debtors argued that a creditor's refusal to immediately foreclose on a surrendered home violated the discharge injunction. 442 B.R. at 167. The bankruptcy court rejected this argument, and the Bankruptcy Appellate Panel and the First Circuit agreed. The bankruptcy court explained:

> Of course, [the creditor's] chosen course of action, or inaction, did not make things easy for the [debtors]. Forces remained at work that could make their continued ownership of the real estate uncomfortable—forces like accruing real estate taxes and the desirability of maintaining liability insurance for the premises. But those forces are incidents of ownership. Though the Code provides debtors with a surrender option, it does not force creditors to assume ownership or take possession of collateral. And although the Code provides a discharge of personal liability for debt, it does not discharge the ongoing burdens of owning property.

12

*Id.* at 172. In this case, Frazier has been forced to provide continuing care for the collateral. But, as *Canning* explains, such "incidents of ownership" are not extinguished by a bankruptcy discharge.

To be sure, the question of whether a creditor's refusal to take possession of surrendered collateral violates the discharge injunction is a fact-intensive one. *See Pratt v. Gen. Motors Acceptance Corp. (In re Pratt)*, 462 F.3d 14, 19 (1st Cir. 2006) ("[T]he line between forceful negotiation and improper coercion is not always easy to delineate, and each case must therefore be assessed in the context of its particular facts."). In *Pratt*, for example, the First Circuit held that a creditor violated the discharge injunction by refusing to release a lien on the debtors' "inoperable" and "worthless" surrendered vehicle unless the debtors paid the outstanding loan balance in full. *Id.* at 16. The First Circuit later provided crucial commentary on *Pratt* in *Canning*, limiting *Pratt* to its specific facts. In upholding the decision of the bankruptcy court and the Bankruptcy Appellate Panel, the First Circuit in *Canning* distinguished *Pratt* on the grounds that "the collateral involved . . . is far from worthless," and emphasized the absence of the "'pay in full' conditional releasee presented in *Pratt*." *Canning v. Beneficial Maine (In re Canning)*, 706 F.3d 64, 71-72 (1st Cir. 2013); *see also Bentley*, 607 B.R. at 896-97 (distinguishing *Pratt* on similar grounds).

Like *Canning* and *Bentley*, this matter is distinguishable from *Pratt*. As Lendmark correctly points out, Frazier does not allege that Lendmark has taken any action, aside from failing to take possession of surrendered collateral, to collect a debt on an *in personam* basis. There is no allegation in the Complaint that Lendmark requested any specific monetary amount from Frazier post-discharge. Moreover, unlike *Pratt*, the collateral is not worthless. Rather, Frazier valued the

13

CR-V at $4,300. Under these specific circumstances, Frazier has failed to state a claim for a violation of the discharge injunction.

Although I do not find that Frazier has stated a claim, this opinion should absolutely not be read as condoning Lendmark's conduct or endorsing a creditor's refusal to negotiate with a debtor willing to compromise. Lendmark's conduct certainly "did not make things easy" for Frazier, particularly at a point when Frazier was recuperating from difficult economic times. *Canning*, 442 B.R. at 172. While these facts, as alleged, do not provide a basis to state a cause of action for civil contempt based on a creditor's refusal to repossess surrendered collateral post-discharge, a debtor may someday be able to state a cause of action under a different set of facts.

## CONCLUSION

For the reasons set forth above, it is hereby **ORDERED** that:

1. Lendmark's *Motion to Dismiss Plaintiff's Complaint and Adversary Proceeding* [dkt. 5] is **GRANTED**;

2. Frazier's claims for outrage (Count I), breach of duty of good faith and fair dealing (Count II), and breach of contract (Count III) are **DISMISSED without prejudice** for lack of subject-matter jurisdiction;

3. Frazier's claim for civil contempt for violation of the Discharge Order (Count IV) is **DISMISSED with prejudice** for failure to state a claim;

4. This adversary proceeding may be **CLOSED** and stricken from the Court's active docket.

**It is so ORDERED.**

14